UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| In re: Frederick Sims McRae<br>    Debtor. | Case No. 24-71950-FJS<br>Chapter 7 |

Matthew W. Cheney
Acting United States Trustee for Region Four,
    Plaintiff               APN No._____
v.

Frederick Sims McRae,
    Defendant.

## COMPLAINT

Matthew W. Cheney, Acting United States Trustee for Region Four, by counsel, brings this complaint against defendant, Frederick Sims McRae, pursuant to 11 U.S.C. §§ 727(a)(2)(B), 727(a)(3), 727(a)(4)(A), and 727(a)(6)(A) and states:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §§ 157 and 1334. Adversary Proceeding arises in a case under Title 11 of the United States Code and is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J).

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

3. The statutory predicates for relief include, but are not limited to, 11 U.S.C. § 727 and Fed. R. Bankr. P. 7001 et seq.

4. The deadline to objection to the debtor's discharge is February 21, 2025.

5. This complaint is timely filed.

6. Plaintiff consents to the entry of final orders or judgments by the Bankruptcy Court.

Kenneth N. Whitehurst, III, Esq., AUST, VSB No. 48919
Cecelia Ann Weschler, Esq., VSB No. 28245
Nicholas S. Herron, Esq., NJSB No. 03007-2008, PASB No. 208988
Office of the United States Trustee
200 Granby Street, Room 625
Norfolk, VA 23510
(757) 441-6012

**PARTIES**

7. Plaintiff, Matthew W. Cheney, is the Acting United States Trustee for Region Four, which includes the Eastern District of Virginia, and is duly appointed under 28 U.S.C. § 581(a)(4).

8. The defendant, Frederick Sims McRae (McRae), is an individual residing in Norfolk, Virginia, in the Eastern District of Virginia and is the debtor in this chapter 7 case.

**FACTUAL ALLEGATIONS**

9. On September 11, 2024 (Petition Date), McRae filed a voluntary chapter 7 petition under Title 11 of the United States Code (Bankruptcy Code).

10. McRae disclosed that he resides at 1729 Princeton Avenue, Norfolk, Virginia 23523 (Princeton Avenue) on his Voluntary Petition.

11. Karen M. Crowley (Crowley) was appointed Chapter 7 Trustee and continues to serve in that capacity.

12. McRae did not file his Schedules and Statement of Financial Affairs (Schedules and Statements) with his Voluntary Petition.

13. On September 12, 2024, the Clerk issued a Notice of Possible Dismissal Pursuant to LBR 1007-1, to McRae for failure to file Schedules and Statements.

14. The deadline to file all remaining Schedules and Statements was September 25, 2024.

15. On September 11, 2024, McRae filed an Application to Have the Chapter 7 Filing Fee Waived (Fee Waiver Application).

16. McRae signed the Fee Waiver Application under penalty of perjury and attested that that he could not afford to pay the filing fee either in full or in installments and that the information contained therein was true and accurate.

17. McRae disclosed a household size of three including two dependents, $1,200 in monthly net income, $1,800 in average monthly expenses, no assistance from anyone toward his monthly expenses, a Chime checking account with a $0.23 balance and a CashApp account (CashApp Account) with a balance of $275 and no other assets on his Fee Waiver Application.

18. On September 12, 2024, the Court entered an order granting the Fee Waiver Application.

19. On September 12, 2024, the Court issued an order to McRae (Order to Debtor) that required him to, among other things, "not sell, refinance, transfer, remove, destroy, mutilate or conceal any of your property, and you shall make all or any part thereof available to the trustee, when requested to do so." The Order to Debtor further required McRae to cooperate with the trustee, provide documentation as requested by the trustee, provide a copy of his most recently filed federal tax return and "obey all orders of the United States Bankruptcy Court."

20. The Order to Debtor is a lawful order of the court.

21. The Order to Debtor was served upon McRae by First Class U.S. Mail, postage prepaid to the address listed on his Voluntary Petition on September 14, 2024.

22. Upon information and belief, McRae received the Order to Debtor.

**Schedules and Statements**

23. On September 24, 2024, McRae filed his Schedules and Statements.

24. McRae signed his Schedules and Statements under penalty of perjury and attested that he had read the Schedules and Statements and that the information contained therein was true and correct.

25. McRae disclosed $937.00 in total assets and $0.00 in total liabilities on his Schedules.

**Schedule A/B**

26. McRae disclosed two televisions and $137.00 in cash as assets on his Schedule A/B.

27. McRae disclosed that he did not own any household goods/furnishings, clothing, jewelry, deposits of money, financial accounts, ownership in any businesses, or other financial assets on his Schedule A/B.

**Schedule D**

28. McRae disclosed that he had no secured creditors on his Schedule D.

**Schedule E/F**

29. McRae disclosed that he had no unsecured creditors on his Schedule E/F.

**Schedule I**

30. McRae disclosed that he was self-employed and that his occupation was "Scrap Metaling (recycling)/Barber" on his Schedule I.

31. McRae disclosed $1,100.00 in combined monthly income and that his sole source of income was from his "Scrap Metaling (recycling)/Barber" occupation on his Schedule I.

**Schedule J**

32. McRae disclosed that he did not have any dependents on his Schedule J.

33. McRae disclosed $2,248.00 in total monthly expenses including a $1,800 monthly housing expense on his Schedule J.

34. McRae disclosed -$1,148.00 in monthly net income on his Schedule J.

**Statement of Financial Affairs**

35. McRae disclosed $10,700.00 in year-to-date gross income, $14,700.00 in 2023 gross income, and $15,000.00 in 2022 gross income from wages, commissions, bonuses, and tips in response to Statement of Financial Affairs question four.

36. McRae did not disclose any year-to-date, 2023, or 2022 gross income received from operating a business in response to Statement of Financial Affairs question four.

37. McRae disclosed that he did not receive any other income for the current year and previous two calendar years in response to Statement of Financial Affairs question five.

38. McRae disclosed that he owned or had connections to Mac Kutz, Inc. (Mac Kutz) and F Mac Capital & Holdings Inc. (FM Capital) within the four years preceding the Petition Date in response to Statement of Financial Affairs question twenty-seven.

39. Upon information and belief, McRae had an ownership interest in FM Capital as of the Petition Date.

**Amended Schedules**

40. McRae filed an Amended Schedules E/F on October 24, 2024.

41. McRae signed the Amended Schedules E/F under penalty of perjury and attested that he had read the Amended Schedules E/F and that the information contained therein was true and correct.

42. McRae disclosed fifteen creditors and $1,118,200.00 in total unsecured debt on his Amended Schedules E/F.

**341(a) meeting of creditors**

43. On October 8, 2024, McRae appeared via Zoom and testified under oath at his 341(a) meeting of creditors.

44. McRae testified that 2021 was the last year he filed tax returns (2021 Tax Returns).

45. Crowley requested a copy of McRae's 2021 Tax Returns.

46. Crowley adjourned McRae's 341(a) meeting of creditors to October 25, 2024.

47. On October 25, 2024, McRae appeared via Zoom and testified at his continued 341(a) meeting of creditors.

48. McRae testified that he does not have any ownership interest in FM Capital.

49. Crowley adjourned McRae's 341(a) meeting of creditors multiple times to November 15, 2024.

50. McRae failed to produce a copy of his 2021 Tax Returns.

**2004 Examination**

51. On January 21, 2025, Plaintiff filed a motion to examine McRae pursuant to Fed. R. Bankr. P. 2004.

52. The Court entered an order granting the Plaintiff's 2004 examination motion on February 3, 2025 (2004 Examination Order).

53. A copy of the 2004 Examination Order was mailed to McRae by the Plaintiff and Court to the address listed on his Voluntary Petition.

54. McRae received a copy of the 2004 Examination Order.

55. The 2004 Examination Order is a lawful order of the Court.

56. McRae was required to produce the following documents pursuant to the 2004 Examination Order:

   a. Debtor's last filed federal and state tax return including all schedules and statements.

    b. All documents used to prepare the debtor's last filed federal and state tax return including but not limited to all W-2s, 1099s, and K-1s.

    c. Bank statements for all bank accounts used or accessible by the debtor for January 1, 2023 through and including March 30, 2024.

    d. Bank statements for all bank accounts used or accessible by F Mac Capital and Holdings Corp. for January 1, 2023 through and including December 31, 2024.

    e. All CashApp statements for all CashApp accounts used or accessible by the debtor for January 1, 2023 through and including December 31, 2023.

    f. Documentation evidencing all sources of income for 2023.

    g. Documentation evidencing all sources of income for 2024.

    h. Contract of sale/purchase agreement for Princeton Avenue.

    i. Settlement statement for Princeton Avenue.

57. McRae did not produce a copy of his last filed federal and state tax return.

58. McRae did not produce the documents used to prepare his last filed federal and state tax returns.

59. McRae failed to produce completely copies of his CashApp Account statements for 2023.

60. McRae failed to produce the Settlement Statement for Princeton Avenue.

**Businesses**

61. McRae created FM Capital on July 9, 2023.

62. On or about July 13, 2023, McRae through FM Capital purchased Princeton Avenue for approximately $198,500.

63. Upon information and belief, Princeton Avenue is encumbered by a mortgage held by Oriole Associates, LLC (Oriole).

64. McRae produced a delinquency notice for Princeton Avenue prior to his 2004 Examination.

65. The monthly mortgage payments for Princeton Avenue are $1,500 based on the produced delinquency notice.

66. The last mortgage payment remitted was in the amount of $1,250 on March 27, 2024 based on the produced delinquency notice.

67. McRae testified during his 2004 examination that three individuals currently reside with him at the Princeton Avenue property including his girlfriend, bother, and adult son.

68. McRae further testified that his girlfriend works and contributes toward the household expenses.

69. On or about May 30, 2022, McRae executed a contract with William Weaver to build an extension to an existing residential property (2022 Contract).

70. The 2022 Contract contains a heading with the business name Ameri Corp Commercial Builders, Ltd. (Ameri Corp).

71. On or about October 6, 2015, McRae created Ameri Corp.

72. McRae testified that he created the 2022 Contract at his 2004 oral examination

73. Weaver gave McRae a cashier's check for $12,000 (2022 Contract Payment) to begin construction.

74. McRae acknowledge receipt of the 2022 Contract Payment during his 2004 oral examination.

75. Upon information and belief, McRae does not have recorded documentation to evidence the disposition of 2022 Contract Payment.

76. Upon information and belief, McRae had an ownership interest in or connections to Ameri Corp within the four years preceding the Petition Date.

77. On or about April 27, 2016, McRae created Freddie Mac Industries Inc. (FM Industries).

78. Virginia State Corporation Commission (SCC) cancelled FM Industries as a Virginia corporation on or about September 1, 2022.

79. Upon information and belief, McRae had an ownership interest in or connections to FM Industries within the four years preceding the Petition Date.

80. On or about February 19, 2020, McRae created Lluvia Inc. (Lluvia).

81. The SCC cancelled Lluvia as a Virginia corporation on or about June 20, 2021.

82. Upon information and belief, McRae had an ownership interest in or connections to Lluvia within the four years preceding the Petition Date.

83. On or about October 9, 2023, McRae created Eyes Wide Shut, Inc. (EWS).

84. EWS is currently pending inactive status with the SCC.

85. Upon information and belief, McRae had an ownership interest in or connections to EWS within the four years preceding the Petition Date.

86. McRae did not disclose his ownership interest in or connections to Ameri Corp, FM Industries, Lluvia, and EWS on his Statement of Financial Affairs.

**Limo Venture**

87. On or about October 3, 2024, McRae opened a checking account with Capital One ending in 0209.

88. On October 16, 2024, McRae received $2,500.00 from Kimberly Riggs (Riggs) through Zelle and deposited into his Capital One account.

89. McRae testified at his 2004 examination that Riggs is a friend residing in Newport News and that the $2,500.00 was a payment to Mercedes Virginia Beach he made on

her behalf because he was in the area.

90. McRae further testified that he did not "own a Mercedes nor do I have any business with Mercedes of Virginia Beach."

91. McRae maintains an Instagram profile using the handle @itsfreddiemac.

92. Plaintiff showed McRae a video posted to his Instagram profile during his 2004 examination marked as exhibit 15.

93. McRae verified the authenticity of the video and that he created the video marked as exhibit 15.

94. The video shows McRae entering the Mercedes Benz Virigina Beach dealership and going over paperwork to purchase a 2025 Maybach GLS 600 (2025 Maybach) on or about October 17, 2024.

95. A copy of McRae's driver's license, and a file folder with McRae's name can be seen during the video.

96. McRae tells the sales representative to title the 2025 Maybach in his name and verifies his phone number and email address.

97. The phone number and email address discussed in the video matches the phone number and email address listed on McRae's Voluntary Petition.

98. McRae also shows a copy of his Capital One debit card during the video.

99. McRae testified that he visited Mercedes Benz of Virginia Beach to purchase a vehicle as part of a limousine service venture (Limo Venture) he began with Riggs after viewing the video.

100. Plaintiff requested documentation regarding the Limo Venture.

101. McRae testified that he does not have any recorded documentation regarding the

Limo Venture.

**Bitcoin Assets**

102. From January 1, 2023 through and including September 10, 2024, McRae purchased and sold bitcoin through his CashApp Account.

103. Upon information and belief, McRae owned bitcoin as of the Petition Date (Bitcoin Assets).

104. The Bitcoin Assets are assets of the estate.

105. McRae did not disclose the Bitcoin Assets on his Schedules A/B.

**Undisclosed Financial Accounts**

106. Upon information and belief, McRae maintained an Apple Cash account (Apple Cash Account) as of the Petition Date.

107. The Apple Cash Account is an asset of the estate.

108. McRae did not disclose the Apple Cash Account on his Schedule A/B.

109. Plaintiff requested that McRae provide statements for the Apple Cash Account for September 11, 2023 through and including January 31, 2025.

110. McRae failed to produce the requested documents.

111. Upon information and belief, McRae maintained a CashApp Account as of the Petition Date.

112. The CashApp Account is an asset of the estate.

113. McRae did not disclose the CashApp Account on his Schedule A/B.

114. Upon information and belief, McRae maintained a Chime checking and savings account as of the Petition Date.

115. The Chime checking and savings account is an asset of the estate.

116. McRae did not disclose the Chime checking and savings account on his Schedule A/B.

117. Upon information and belief, McRae maintained a Navy Federal Credit Union (NFCU) savings account ending in 4528 as of the Petition Date.

118. The NFCU savings account ending in 4528 is an asset of the estate.

119. McRae failed to disclose the NFCU savings account ending in 4528 on his Schedule A/B.

**Prepetition Income**

120. McRae testified that he did not work in 2022 and 2023 during his 2004 examination.

121. From January 1, 2023 through and including July 31, 2023, McRae received approximately $27,463.41 into his CashApp Account (2023 Deposits).

122. Upon information and belief, McRae does not have recorded documentation evidencing the source of funds for the 2023 Deposits.

123. From January 1, 2024 through and including September 10, 2024, McRae received approximately $51,391.49 into CashApp Account (2024 Deposits).

124. Upon information and belief, McRae does not have recorded documentation evidencing the source of funds for the 2024 Deposits.

**Post-Petition Income**

125. From September 12, 2024 through and including November 30, 2024, McRae received approximately $11,063.41 into his CashApp Account, $470.93 into his Chime checking account, and $3,895.14 into his Capital One account (collectively "Post-Petition Income").

126. Upon information and belief, McRae does not have recorded documentation evidencing the source of funds for the Post-Petition Income.

## Count I
## 11 U.S.C. § 727(a)(2)(B)

127. Plaintiff repeats the allegations contained in each preceding paragraph as if set forth herein.

128. Pursuant to section 727(a)(2)(B), the court shall not grant a discharge to a debtor that "with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed… property of the estate, after the date of the filing of the petition." 11 U.S.C. § 727(a)(2)(B).

129. McRae transferred, removed, destroyed, mutilated or concealed, or permitted to be transferred, removed, destroyed, mutilated, or concealed his interest in Bitcoin Assets with the intent to hinder, delay, or defraud a creditor, or an officer of the estate after the Petition Date.

130. McRae transferred, removed, destroyed, mutilated or concealed, or permitted to be transferred, removed, destroyed, mutilated, or concealed his interest in the Apple Cash Account with the intent to hinder, delay, or defraud a creditor, or an officer of the estate after the Petition Date.

131. McRae transferred, removed, destroyed, mutilated or concealed, or permitted to be transferred, removed, destroyed, mutilated, or concealed his interest in the CashApp Account with the intent to hinder, delay, or defraud a creditor, or an officer of the estate after the Petition Date.

132. McRae transferred, removed, destroyed, mutilated or concealed, or permitted to be transferred, removed, destroyed, mutilated, or concealed his interest in the Chime checking and savings account with the intent to hinder, delay, or defraud a creditor, or an officer of the estate after the Petition Date.

133. McRae transferred, removed, destroyed, mutilated or concealed, or permitted to be transferred, removed, destroyed, mutilated, or concealed his interest in the NFCU savings account ending in 4528 with the intent to hinder, delay, or defraud a creditor, or an officer of the estate after the Petition Date.

134. McRae transferred, removed, destroyed, mutilated or concealed, or permitted to be transferred, removed, destroyed, mutilated, or concealed his interest in FM Capital with the intent to hinder, delay, or defraud a creditor, or an officer of the estate after the Petition Date.

135. McRae should be denied a discharge under section 727(a)(2)(B) of the Bankruptcy Code.

**Count II**
**11 U.S.C. § 727(a)(3)**

136. Plaintiff repeats the allegations contained in each preceding paragraph as if set forth herein.

137. Pursuant to section 727(a)(3), the court shall not grant a discharge to a debtor that "has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case." 11 U.S.C. § 727(a)(3).

138. McRae concealed, destroyed, mutilated, or failed to keep or preserve any recorded information, including books, documents, records, and papers regarding the Limo Venture.

139. McRae concealed, destroyed, mutilated, or failed to keep or preserve any recorded information, including books, documents, records, and papers regarding the Apple Cash Account.

140. McRae concealed, destroyed, mutilated, or failed to keep or preserve any recorded information, including books, documents, records, and papers regarding his CashApp Account statements for 2023.

141. McRae concealed, destroyed, mutilated, or failed to keep or preserve any recorded information, including books, documents, records, and papers regarding the source of funds for the 2024 Deposits.

142. McRae concealed, destroyed, mutilated, or failed to keep or preserve any recorded information, including books, documents, records, and papers regarding the source of funds for the 2023 Deposits.

143. McRae concealed, destroyed, mutilated, or failed to keep or preserve any recorded information, including books, documents, records, and papers regarding the disposition of the 2022 Contract Payment.

144. McRae concealed, destroyed, mutilated, or failed to keep or preserve any recorded information, including books, documents, records, and papers regarding his last filed federal and state tax return.

145. McRae concealed, destroyed, mutilated, or failed to keep or preserve any recorded information, including books, documents, records, and papers regarding his Post-Petition Income.

146. McRae's failure to keep or preserve the aforesaid mentioned financial documents deprives the trustee and his creditors of information needed to ascertain his financial condition and track his financial dealings with substantial completeness and accuracy for a reasonable period past to present.

147. McRae's actions or failures to act are not justified under all the circumstances of the case.

148. McRae should be denied a discharge under section 727(a)(3) of the Bankruptcy Code.

### Count III
### 11 U.S.C. § 727(a)(4)(A)

149. Plaintiff repeats the allegations contained in each preceding paragraph as if set forth herein.

150. Pursuant to section 727(a)(4)(A), the court shall not grant a discharge to a debtor that "knowingly and fraudulently, in or in connection with the case, made a false oath or account." 11 U.S.C. § 727(a)(4)(A).

151. McRae knowingly and fraudulently made false statements in connection with his Schedule A/B by failing to disclose the Bitcoin Assets.

152. McRae knowingly and fraudulently made false statements in connection with his Schedule A/B by failing to disclose the Apple Cash Account.

153. McRae knowingly and fraudulently made false statements in connection with his Schedule A/B by failing to disclose the CashApp Account.

154. McRae knowingly and fraudulently made false statements in connection with his Schedule A/B by failing to disclose the Chime checking and savings account.

155. McRae knowingly and fraudulently made false statements in connection with his Schedule A/B by failing to disclose the NFCU savings account ending in 4528.

156. McRae knowingly and fraudulently made false statements in connection with his Schedule A/B by failing to disclose his interest in FM Capital.

157. McRae knowingly and fraudulently made false statements in connection with his Fee Waiver Application by failing to accurately disclose his current monthly income.

158. McRae knowingly and fraudulently made false statements in connection with his Fee Waiver Application by failing to accurately disclose his current monthly expenses.

159. McRae knowingly and fraudulently made false statements in connection with his Fee Waiver Application by failing to disclose that his girlfriend helps cover his household expenses.

160. McRae knowingly and fraudulently made false statements in connection with his Fee Waiver Application by failing to disclose the NFCU savings account ending in 4528.

161. McRae knowingly and fraudulently made false statements in connection with his Fee Waiver Application by failing to disclose Bitcoin Assets.

162. McRae knowingly and fraudulently made false statements in connection with his Fee Waiver Application by failing to disclose his interest in FM Captial.

163. McRae knowingly and fraudulently made false statements in connection with his Schedule I by failing to accurately disclose his monthly income.

164. McRae knowingly and fraudulently made false statements in connection with his Schedule J by failing to accurately disclose his monthly expenses.

165. McRae knowingly and fraudulently made false statements in connection with his Schedules and Statements by failing to accurately disclose his gross year-to-date income.

166. McRae knowingly and fraudulently made false statements in connection with his Schedules and Statements by failing to accurately disclose his gross 2023 income.

167. McRae knowingly and fraudulently made false statements in connection with his Schedules and Statements by failing to accurately disclose his gross 2022 income.

168. McRae knowingly and fraudulently made false statements in connection with his Schedule E/F by failing to disclose creditors.

169. McRae knowingly and fraudulently made false statements in connection with his Schedules and Statements by failing to disclose his ownership interest in or connections to Ameri Corp.

170. McRae knowingly and fraudulently made false statements in connection with his Schedules and Statements by failing to disclose his ownership interest in or connections to FM Industries.

171. McRae knowingly and fraudulently made false statements in connection with his Schedules and Statements by failing to disclose his ownership interest in or connections to Lluvia.

172. McRae knowingly and fraudulently made false statements in connection with his Schedules and Statements by failing to disclose his ownership interest in or connections to EWS.

173. McRae falsely testified during his 341(a) meeting of creditors that he did not have any ownership interest in FM Capital.

174. McRae falsely testified during his 2004 examination that did not "own a Mercedes nor do I have any business with Mercedes of Virginia Beach."

175. McRae knowingly and fraudulently made false statements regarding the Limo Venture at his 2004 examination.

176. McRae's false statements are material to his financial transactions, estate, and assets.

177. McRae should be denied a discharge under section 727(a)(4)(A) of the Bankruptcy Code.

## Count IV
## 11 U.S.C. § 727(a)(6)(A)

178. Plaintiff repeats the allegations contained in each preceding paragraph as if set forth herein.

179. Pursuant to section 727(a)(6)(A), the court shall not grant a discharge to a debtor that has refused, "to obey any lawful order of the court, other than an order to respond to a material question or to testify…" 11 U.S.C. § 727(a)(6)(A).

180. McRae received the Order to Debtor and failed to comply with its terms.

181. McRae refused to obey the Order to Debtor by concealing assets.

182. McRae refused to obey the Order to Debtor by failing to provide documents to Crowley.

183. McRae refused to obey the Order to the Debtor by failing to cooperate with Crowley.

184. McRae's actions have impeded Crowley's ability to administer the estate.

185. McRae received the 2004 Examination Order and failed to comply with its terms.

186. McRae refused to obey the 2004 Examination Order by failing to produce copies of his last filed federal and state tax returns, documents used to prepare his last filed federal and state tax returns, complete copies of his CashApp Statements for 2023, and the Settlement Statement for Princeton Avenue.

187. McRae should be denied a discharge under section 727(a)(6)(A) of the Bankruptcy Code.

**WHEREFORE**, Plaintiff prays that the discharge of the Defendant be denied and for such other relief as is appropriate.

RESPECTFULLY SUBMITTED,

Matthew W. Cheney
Acting U.S. Trustee for Region Four

By: /s/ Nicholas S. Herron

Kenneth N. Whitehurst, III,
Assistant U.S. Trustee

Nicholas S. Herron
Trial Attorney